Good morning, Your Honors. William O. Guffey appearing on behalf of the class members. May it please the Court. I urge this Court to use the well-known cardinal rule of statutory construction of expressio unios as exclusio alterios. When considering the Secretary's broad claim of discretion, the Secretary claims unfettered discretion in terms of developing a program, claims that it can deny release for any reason that is not arbitrary or capricious. And that simply is excluded by the statute. There are four under 9.94a.7282d. There are four and only four factors that the Department can consider if it's going to deny release. That's why this maximum of statutory construction is appropriate in this case. And this Court has used it, if my counting is correct, at least 25 times in the last five years, that it just strikes me as real close to arrogance of power to think this kind of unfettered discretion exists. And I think, beyond that, there are other I would think it's important to realize that the statutory, the Secretary claims a statutory notification defense, or at least that's how I heard it, on page 6 of the Secretary's brief. He asserts that one reason they can keep an individual beyond, an inmate beyond is because they have to have time to give statutory notice. We've submitted a second supplemental authority, which, for some reason, the Department did not include when it filed its policy 25300, or 35200, I'm sorry, in the district court. I'm sorry, I didn't mean to say, Mr. Cheney, what exactly is your constitutional theory? What is the theory of the violation that you're alleging, in a nutshell? That there is a vested earned early release credit, Your Honor, and that that vested earned early release credit cannot be deprived without a hearing? Well, first, it wasn't prived or denied, actually, or literally, what it is. Subject release is subject to the discretion, under the criteria that you just mentioned, to approve a release plan submitted by the prisoner. Right? Judge, what I would say is that if one looks at the discretion set forth in 728-2c, that the negative inference is the Department shall release these inmates unless it finds one of these four factors. And you're talking about the Section D? Yes. 2 to 2d, I believe. 728-2d. That the negative inference is that there's four reasons that they can deny release. But if they don't find one of those four, they have to release them. And we're in a certainly it appears that way to me, that they have more than just to use the phrase in greenholts of wish or desire to be free. They have a real expectation of being released on this release date unless the Department finds one. Let me try again. Are you claiming that there was, on behalf of the class, that there was a statutory violation, or are you claiming that there's some kind of constitutional violation? Both. Well, the statutory violation, I don't understand how they get you here. And the constitutional violation, it seems to me, turns on whether the statute itself is outcome determinative or is discretionary. And that dictates the line of authority that controls our decision. Your Honor, it seems to me that that line of authority deals with the issue of discretion. Yes. The Secretary has done, I believe, everything that can arguably reasonably be done to show it has this broad discretion. Therefore, the statute isn't outcome determinative. The class members are suggesting that it is outcome determinative unless one of four narrowly defined factors are found. And that the Department does not have unfettered discretion as the Department claims. Let me see if I can be more specific. Dr. Gill. The factors, for example, are the release plan, the risk, whatever else. If the Department determines that the release plan is no good, is that or is your position that that is what is entitled to a hearing about, or is it just a minute? Yes, I'm sorry, Judge Gershwin. That, as I understand it, there's another set of instances. And one of the problems here is your class just seems to be quite diverse. But there seems to be a set of instances in which, without making any of those findings, they don't release people for your administrative reasons or they're not up to you're just not up to them yet. So which one are you talking about? Are you talking about both those sets of people? Yes. All right. The second one I can understand, although I don't understand why a hearing is going to help you. In other words, if there are – if they don't make the findings in any of these categories that are in the statute, but they simply sit on their applications because they haven't gotten to them, a hearing isn't going to help you. You have a substantive problem. They should have released you, the person. Your Honor, it appears to me that despite the majority in Greenholz, that in fact, facts are necessary to exercise discretion. For example, elders, like we believe they are. That's not what I asked you. I'm assuming the second-quarter category of people, you would say, there's simply no discretion, and there's not even any determinations to be made. They're just acting illegally. They can't – they have to let these people out once they have approved plans, and they're just – That's correct. Slow. Yes, that's correct. All right. So a hearing is sort of besides the point. Okay. What's a hearing going to do? But the hearing – that's the reason we hope this class action will be allowed to continue. Even if the Court decides a hearing is not the issue, that there's per se violations of their constitutional right to be freed based on the terms of the statute. That's right. But that's why it looks like your class is made up of a rather diverse set of people who maybe shouldn't be a class, but that's not the issue before us at this point. And so then there's the other category of people as to whom – I guess there are two other categories of people, at least, as far as I can tell. One is a category of people as to whom decisions were made based on the statutory criteria, but you haven't had a hearing on them. That is correct, Your Honor. All right. So then we would have to decide whether there is discretion as to those subcategories of information, of factors, or – in other words, if it – the statute says if the part which determines a inventor's release plan may – is inadequate for whatever reason, is that a reviewable – is that a determination that's not a discretionary one? I think it's a question of whether the discretion can be used without a factual determination, without a hearing to determine the facts. The Eldridge Declaration makes it very clear that they denied a release address simply because the department couldn't find the address. That's not – that's discretion, I guess, but I don't think the statute didn't give the department the discretion not to find, as a factual matter, a house and then deny release. It seems to me that's – I didn't mean to be so argumentative, Your Honor. But it just does seem to me that that's an illustration of why a hearing is necessary, that this – How would a hearing help them find an address? The – I think that it would give the inmate an opportunity, Your Honor, to simply say, you know, it's down the alley. Well, what if that happened? I mean, didn't they go and say to him, we're not doing it because we can't find the address? That's correct. It's part of the record. I think it's 118. So what's the difference between that and a hearing? They went to him and they said, we can't find the address, and he said, it's down the alley. Well, now, it would appear to me if the department had told Mr. Elders, we're going to have a hearing because we've decided we're going to deny your release plan because we're not going to approve your address. But you do have an opportunity to attend the hearing, essentially a Wolf hearing. But from our standpoint, the hearing in Greenholz would be just fine. Okay. I think we understand the argument, and your time has expired. Thank you very much, Your Honor. Thank you. Mr. Carr. Thank you, Your Honor. May it please the Court. Good morning. My name is Douglas Carr. I'm an assistant attorney general for the State of Washington and represent the Respondent in this matter, Mr. Layman. Now, the issue, the central issue in this case is whether Washington inmates have a constitutionally protected liberty interest under the Fourteenth Amendment in being released to community custody before the expiration of the confinement portion of their sentence. Now, Bill, aren't there a bevy of Washington State cases at this point which say that there is a liberty interest here of some variety? That is correct, Your Honor. And what the And why isn't that essentially binding on us? Not because their constitutional ruling is binding on us, but because underlying it is a view of what's discretionary and what isn't. Well, Your Honor, what the State courts have said in a number of cases, starting with the Crowder case and Dutcher and finishing with Littrapp, was that there was a limited liberty interest. And I think that the court misapprehended the precise issue. But that doesn't matter, does it, to us? I mean, if they were taking a view of this determinative question, which is whether or not there is discretion as to all of this or some piece of it that's not discretionary, then that has to be binding on us. That's a State statutory determination, is it not? It is not, Your Honor. These were not interpretations of the relevant statute. What they were was, and I would concede that they were pronouncements of a Federal constitutional liberty interest. And this Court has consistently made clear that the State court's determination of Federal issues is not binding on the Federal courts. So it doesn't matter what the State concluded. I would say, though, that, Your Honor, that the State court misapprehended the precise issue. What they used was this broad statement about interest in their earned early release credits. The precise issue that the court should have been looking at for these particular inmates is whether they had a liberty interest in release to the community custody before their sentence expired. And is your position that they have none, that the agent had to be given the statute and the regulations, the department could just say to some one of these people sorry, we're just not going to even consider your proposed arrangement? No, that's not our position at all, Your Honor. The State courts have made it clear, again, in that line of cases, starting with Crowder and ending with Liptrap, that they have some rights under the State statutes. And that right is that if they have earned early release credits, that those credits make them eligible to be considered for release. Okay. And that clearly happened with all the named plaintiffs in this case. Several released four or five days after their early release date. We have the case of Ms. Marshall that was released something like 75 days after her early release date. But the State courts have made it clear. And not because of a finding that any of the conditions in Section D were not met, just because you made some screw-up? I'm not sure I understand your question. Well, not because the — in some of these instances, it wasn't because any of the determination, adverse determination was made on any of the statutory factors. It was because of something else. No. No. I mean, the statutory factors, again, they're not mandatory. And if you look at the statutory scheme here, which is 994A.728, and it says that, quote, No person serving a sentence imposed pursuant to this chapter shall leave the confines of the correctional facility or be released prior to the expiration of the sentence, except as follows. That's clearly the mandatory language that the Court is looking at in Greenholz and Allen. But it's — but the presumption is not that you will be released. The presumption is that you will stay in. And this particular statute goes on to say that inmates may have their sentences reduced by her early release time. And then it also further indicates that, with respect to community custody inmates, that they may become eligible for community custody. You're taking — you would take the same position, although it's not directly relevant here, with regard to people who are not in the community custody situation but who could actually be released. Well, that's not the issue before this Court. I understand that, but your emphasis in the word may says that you would take the same position in either instance. I think the analysis would be the same, Your Honor. Yes, it would. But in practice and under State law, the courts have determined that those inmates who do not have community custody must be released on their early release date. And the evidence that we presented in this case was that, in fact, they are. And that was unrefuted. The inmates without community custody are, in fact, released on their early release date. Now, I think it's important to look at how all the State courts — again, your question was whether the State court's pronouncement of a Federal liberty interest is binding. It clearly is not. That goes to the very heart of the Federal court's jurisdiction to determine whether there is a liberty interest. If they were applying it right, the theory, however, that we — I gather we now agree that it's the Greenholds theory that matters, right? You withdraw your suggestion that it isn't. Yeah, I would agree. Okay. So what matters at bottom is whether there is a degree of discretion that underlies this. Well, I mean, Your Honor, all of the cases, and even in the Greenholds and the Allen  case, the Greenholds case was a parole case. The Board of Pardons v. Allen was a parole case. There's discretion in all of those. And the Court's focus was on the language. And what the Court said is that there must be, under State law, a presumption of release. And that's the word that the Court used in Greenholds, a presumption. And they used some other words like legitimate expectation or entitlement. When you look at this particular statute, there is no presumption of release. It's like writing a statute like subsection D that says the department may deny transfer for X, Y, and Z reason if there wasn't the negative implication that you can't deny transfer for other reasons. What would be the point of this provision? Well, the — those would, I guess, be what the Supreme Court called the substantive predicates that were in existence in the parole cases. And, yes, they are there. But they must be read in conjunction with the other parts of the statute, which, again, are not mandatory. And the Supreme Court made clear, and this Court — But if the State courts have not read it this way, if the State courts have read this subsection as stating the factors that matter, then why isn't that determination binding on us? No. I don't believe that any of the courts have looked at that particular subsection and said that they must be released absent a finding by the Department of Corrections that this criteria is met. None of the courts have said that. And that's not the understanding that underlies the repeated statement that they have a limited liberty interest. Well, it's hard to tell how the State courts arrive at their liberty interest analysis. The cases simply cite to the previous case that there's a limited liberty interest. When you go back to the first case, they cite to a disciplinary hearing case. Again, that wouldn't be binding on this Court. The State courts have never really interpreted this section. However, I would note that this particular section, which contains the substantive predicates, it's not mandatory. It says that they may deny them for these reasons, and also it does not say that these are the only reasons. So, for example, you could have another legitimate reason for not releasing somebody that's not covered by this. Say, for example, an inmate whose very safety might be at risk because of the plan that he proposed, because he was a notorious criminal or a sex offender. That would be a legitimate reason for the Department to deny that plan. This is not mandatory. There is no language. And it's, I think, the dichotomy is when you look at the Crowder case. Kagan. But when you've got a limited liberty interest, and never mind whether the cases in the Washington cases are distinguishable, okay, just assume that there's a limited liberty interest, what processes do for a limited liberty interest? Well, if you, again, if the Crowder case was the first case in the State to say that there was a limited liberty interest, and what they said there, they didn't require any process. They didn't require a hearing. They, I think, were rightly recognized that this is not an adversarial process, that a hearing, I mean, when would this be conducted? Well, the statute itself is a --"provides for a collaborative decision-making  Does that suffice? Well, I don't think so. Or are there circumstances under which there actually must be a hearing? The Crowder case said if the Department followed the statute and followed its policies and had legitimate reasons for denying a plan, then that would provide due process. I'm not sure that that's the case. What, in fact, happened in these cases? This is what I asked your opponent. If, when they couldn't find the address and they said this is going to be denied, did they go tell him that? Well, I believe that there is a communication. Again, this is a collaborative process. Does the record show that? I don't believe it's in the record, Your Honor. What if they didn't show? What if they found this out and instead of going to him and said, you know, we can't find the address, could you help us find the address? They just said nothing to him. Would that be a due process problem? I don't think it would, Your Honor, because, again, a particular situation, again, this negligence would not be something that would be actionable. Well, it's only negligence if they have some obligation to do it. I'm asking you, suppose they had a policy that we're not going to tell people about why we're denying release ever? Well, I think, practically speaking, if you understand that this is a collaborative process that occurs over many months and the policy which was submitted indicates that that process starts four months before the release, they provide some, there's a give and take there. There is communication. So that would be a way of saying that he got due process, that there is a process that provides due process. But your real position is there doesn't have to be any. That it would be perfectly fine if they just, if he submitted a release plan, they looked at it, they said, you know, we don't care for this, and didn't tell him why, and that was the end of it. Well, if there's a liberty of interest, we would agree with the Crowder Court's decision that this give and take and … I understand it, but your position is that they don't have to do that much. Well, they do do that much, but I think what we're looking at here is a Federal constitutional question, which is, again, you have to use the Greenholtz analysis. It's not sufficient, and I would note that the appellants have not set forth any test for this Court to decide this issue. They simply say, well, the State courts have decided, so your job is done. That is not the case. And the statutes do … Well, but we could just … Mr. Carr, I think your time … That's what the State courts … Your time has expired, and I think Judge Allercon has a question. You may have answered this to a question posed by Judge Marzomba. I didn't quite hear her question. In your brief, you said, we have no jurisdiction. I take it that because after you filed the brief, the district court amended its judgment. You've changed your position, and we do have jurisdiction. Well, clearly, when the district court initially ruled on this, it only dealt with the damages issued based on qualified amendments. It subsequently, I guess you could call it a clarification, and said what the Admiral meant to say was, we're dismissing the entire case, which was appropriate in light of its finding that there wasn't a liberty interest. So I think that would probably have cured … would probably have cured the jurisdiction of the district court. Your answer is yes. Pardon? Your answer is yes. We have jurisdiction. Well, I don't know if I want to concede that, Your Honor. Of course, this Court always has the independent obligation to ensure that it has jurisdiction over any case, and … but I would say, Your Honor, that the district court's subsequent order probably cured the defect. We would ask that this Court affirm the considered and reasoned judgment of the district court. Thank you, Your Honor. Thank you, Mr. Ray. Let me equalize the time, and we'll give you a minute if you'd like to say anything in rebuttal. Counsel's presentation suggests why I again urge this Court to use the principle of expresso unios. This idea that you can – that a statute can have A, B, C, and D, and then mysteriously it's any other discretion just is inconsistent with this Court's position that it is – that you can use this rule of statutory construction approximately 25 times, and it specifically applies it when the issue is the method of proceeding. I do believe that it is clear the Department's real close to saying, trust us, and I just don't think we can deal with the constitutional rights, protect the constitutional rights of the inmates, based on the good faith representation by the Secretary. Thank you. Okay. Thank you, counsel. Both I read from your argument, and the matter just argued will be submitted. We'll next to your argument in trust, which is Fostholm and Village.
judges: Alarcon, Rymer, Berzon